UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CHRISTINE CRAWFORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18 CV 457 |
| | ) |
| WALGREEN CO., | ) |
| | ) |
| Defendant. | ) |

**OPINION and ORDER**

This matter is before the court on defendant's motion to exclude plaintiff's experts (DE # 24) and defendant's motion for summary judgment (DE # 27). For the reasons that follow, defendant's motion to exclude will be granted in part and denied in part, and defendant's motion for summary judgment will be denied.

**I.   BACKGROUND**

*A.   Factual Background*

Plaintiff Christine Crawford originally filed her complaint in the Lake Superior Court, alleging that defendant Walgreen Co. negligently dispensed medication to her that contained lactose, despite knowing that she is lactose intolerant, and without warning her that the medication contained lactose. (DE # 5.) Defendant removed the case to this court based on diversity jurisdiction. (DE # 1.)

The undisputed factual allegations are as follows. Between 2011 and 2018, defendant routinely filled plaintiff's prescription for Triamterene. (DE # 24-5.) According to plaintiff, when she first began taking the medication, it was a different

brand and did not cause her any sickness. (DE # 24-11 at 71.) However, around the time that plaintiff began receiving a different brand of the medication (Sandoz), in 2016 or early 2017, she began experiencing symptoms that she now believes were caused by the medication. (DE # 24-5 at 25; DE # 24-11 at 26, 70-71.) Plaintiff claims that she suffered the following injuries as a result of taking the lactose-containing Triamterene: "severe life-altering diarrhea which has led to the diagnosis of several urinary tract infections, chronic irritation of the colon, colon inflamation, colitis and C. Difficile Toxin . . ." (DE # 24-12 at 4.) Plaintiff testified that, in the year since she stopped taking Triamterene, she can only recall one instance of diarrhea. (DE # 24-11 at 64.)

Plaintiff's medical records indicate that she has complained of persistent diarrhea, urinary tract infections (UTIs) and colitis symptoms dating back to 1996, before she received her first dose of Triamterene in 2011. (DE # 24-2 at 1, 24-25, 27-28, 33; DE # 24-3 at 18-20, 23, 28-30, 32-34, 40-42, 49-51, 53, 56, 58, 59; DE # 24-4 at 4.) Plaintiff's medical records also reveal that she has reported to her physicians that she has suffered from periodic diarrhea for decades, after contracting amoebic dysentery in Mexico in the 1970s. (*See e.g.* DE # 24-1 at 8.)

Plaintiff stopped taking the Triamterene in August 2018, after discovering that the medication contained lactose. (DE # 24-11 at 62.) Plaintiff was diagnosed with, and treated for, a UTI in June 2019, nearly 10 months after she stopped taking the Triamterene. (DE # 24-14 at 7.)

2

Triamterene itself does not contain lactose, but lactose is an inactive ingredient, likely used to make the capsule that contains the medication. (DE # 24-15 at 8.) When filling a medication for a patient who is noted to have lactose intolerance, defendant's computer system would not flag the presence of lactose as an inactive ingredient if the medication contained less than one gram per dose. (*Id.* at 4.) Defendant's pharmacists would only speak to a patient about the fact that a medication contains lactose if this computer system flagged the presence of lactose – meaning that defendant's pharmacists would only alert a patient to the presence of lactose in a medication if the medication contained more than one gram of lactose per dose. (*Id.*)

B.   *Expert Opinions*

Plaintiff disclosed two experts, Dr. Brett Brechner and Robert Belloto, Ph.D. Plaintiff intends to use Belloto to establish the pharmacist standard of care, and to provide evidence that defendant breached this standard of care. (DE # 29 at 8-9.) Plaintiff intends to use Dr. Brechner to establish a causal link between plaintiff's use of Triamterene and her adverse symptoms. (*Id.* at 17.)

Belloto has his Ph.D. in Pharmacy and works as a pharmacist. (DE # 24-6 at 1-2.) Belloto has opined as to the standard of care of a pharmacist and has concluded that defendant should have notified plaintiff that the Triamterene contained lactose as an inactive ingredient. (DE # 24-7.) Belloto opined that defendant breached its standard of care by failing to warn plaintiff. (*Id.*) In forming his opinion, Belloto relied on an article by Filippo Fassio *et al.*, which states that most lactose intolerant patients can tolerate

3

five grams of lactose per single dose, with an increase in the tolerance threshold if the lactose is consumed together with other nutrients. (DE # 24-7 at 2; DE # 24-8 at 7.) Belloto's report also relied on the Fassio article's statement that even small amounts of lactose, as little as 0.01%, is enough to induce symptoms in at least a portion of lactose-intolerant patients. (DE # 24-7 at 2; DE # 24-8 at 7.) Belloto explains that 0.01% is the equivalent of 0.01 g/100 g of a product, which is the equivalent to 10 mg of lactose. (DE # 24-7 at 2.) Given that some patients can experience symptoms from even very small amounts of lactose, and given that predictions of adverse effects based on statistical models are difficult and are only probabilistic in nature, Belloto opined that "the standard of care would be to notify the patient via counseling and discussion that the capsule does contain lactose and it is possible that it can cause adverse effects. Then, perhaps, a few capsules could have been dispensed to see if any adverse effects were observed by Ms. Crawford. Another alternative would be to look for a different dosage form or therapy." (*Id.* at 3.) He concluded, "[i]t certainly appears that the standard of care was breached by failing to notify the patient that the capsules contained lactose." (*Id.*)

Plaintiff's other expert, Dr. Brechner was one of plaintiff's treating physicians. Plaintiff was a patient at Dr. Brechner's medical practice and Dr. Brechner personally treated plaintiff on two occasions, on January 24, 2018, and on August 29, 2018. (DE # 24-10 at 1.) Dr. Brechner opined: (1) that the daily ingestion of lactose in the Triamterene may have caused or contributed to plaintiff's chronic diarrhea and colitis; (2) her colitis

4

and diarrhea predisposed her to recurrent urinary tract infections which required multiple antibiotics; (3) the use of multiple antibiotics was likely the cause of the C. Diff colitis; and (4) while plaintiff's diarrhea persisted after she changed medications, the diarrhea and colitis would not be expected to clear up immediately if it was caused directly by the lactose in the Triamterene. (*Id.* at 2.)

Defendant now moves to exclude both of plaintiff's experts. (DE # 24.) Defendant also moves for summary judgment on the basis that the absence of an admissible expert opinion that the Triamterene caused plaintiff's symptoms requires that judgment be entered in favor of defendant as a matter of law. (DE # 27; DE # 28.) The motions are fully briefed and are ripe for ruling.

## II.   ANALYSIS

### A.   *Motion to Exclude Legal Standards*

In this case, the court's jurisdiction is based on diversity of citizenship. Therefore, the court must apply federal procedural law and state substantive law. *C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 831 (7th Cir. 2015). The parties do not dispute that Indiana substantive law applies here.

Plaintiff's claim is for negligence. "To prevail on a claim of negligence, a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach." *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind. 2007).

5

In this diversity action, Indiana law governs whether an expert is needed to establish the standard of care or the causation of a plaintiff's injuries. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 760 (7th Cir. 2004) (standard of care); *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 701 (7th Cir. 2015) (causation). Generally, under Indiana law, "[a] plaintiff must present expert testimony to establish the applicable standard of care and to show whether the defendant's conduct falls below the standard of care." *Musser*, 356 F.3d at 760; *see also Smith v. Walsh Constr. Co. II, LLC*, 95 N.E.3d 78, 90 (Ind. Ct. App. 2018); *Troutwine Ests. Dev. Co., LLC v. Comsub Design & Eng'g, Inc.*, 854 N.E.2d 890, 902 (Ind. Ct. App. 2006); *Shidler v. CVS Pharmacy Inc.*, No. 205-CV-209 CAN, 2007 WL 601748, at *3 (N.D. Ind. Feb. 20, 2007) (expert testimony required to establish the standard of care for pharmacist). Indiana law also generally requires expert testimony to establish causation in cases involving the relationship between an injury and a pre-existing condition, because the causal connection in such cases involves complicated medical questions beyond the understanding of a lay person. *See Spinnenweber v. Laducer*, 983 F.3d 301, 305 (7th Cir. 2020) (citing *Daub v. Daub*, 629 N.E.2d 873, 877-78 (Ind. Ct. App. 1994)).

While the court must look to Indiana law to determine whether an expert is needed to establish the standard of care or causation, the court must look to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), to determine whether plaintiff's proposed experts' opinions are admissible. *C.W. ex rel. Wood*, 807 F.3d at 834. Rule 702 provides:

6

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Under *Daubert,* the court must be satisfied, first, that the expert can testify based on valid scientific, technical, or specialized knowledge, *i.e.*, whether the expert's testimony is reliable, and second, whether that testimony will be of assistance to the trier of fact. 509 U.S. at 592; *United States v. Welch*, 368 F.3d 970, 973 (7th Cir. 2004); *Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 816 (7th Cir. 2004). The reliability issue requires the court to determine whether the expert is qualified in the relevant field and used a reliable methodology to arrive at his or her conclusions. *Zelinski v. Columbia 300, Inc.,* 335 F.3d 633, 640 (7th Cir. 2003); *Smith v. Ford Motor Co.,* 215 F.3d 713, 718 (7th Cir. 2000). In this case, the qualifications of plaintiff's experts is not at issue. Thus, the court may proceed directly to the issue of reliability.

A district court's inquiry under *Daubert* is a flexible one, and therefore the court has wide latitude in performing this gate-keeping function and determining whether the expert testimony is reliable. *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 894 (7th Cir. 2011). The overarching inquiry under Rule 702 is "the scientific validity and thus the evidentiary relevance and reliability of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594-95 (footnote omitted); *see*

7

*also C.W. ex rel. Wood*, 807 F.3d at 834 ("The district court is the gatekeeper of expert testimony. We stress that 'the key to the gate is not the ultimate correctness of the expert's conclusions. Instead, it is the soundness and care with which the expert arrived at her opinion[.]'" (quoting *Schultz v. Akzo Nobel Paints, LLC*, 721 F.3d 426, 431 (7th Cir. 2013))).

    B.    *Motion to Exclude Belloto*

Plaintiff identified Belloto as an expert who could establish the standard of care, and provide evidence that defendant breached that standard of care. Indiana law recognizes that pharmacists owe a duty of care to their customers. *Hooks SuperX, Inc. v. McLaughlin*, 642 N.E.2d 514, 519 (Ind. 1994) ("[P]harmacists must exercise that degree of care that an ordinarily prudent pharmacist would under the same or similar circumstances."). The parties in this case do not dispute that defendant owed plaintiff a duty of care. The question, then, is what defendant's duty consisted of. *See id.* Plaintiff attempts to answer this question using Belloto's evidence.

Defendant has moved to exclude Belloto as an expert on the basis that his opinion – that the standard of care required defendant to notify plaintiff that the capsule contained some amount of lactose – is based on an unreliable methodology. (DE # 24 at 13.) First, defendant argues that Belloto's opinion relies on the Fassio article's statement that amounts of lactose as little as 0.01% is enough to induce symptoms in some lactose-intolerant patients. (*Id.* at 12.) Defendant correctly points out that the Fassio article does not cite any support for this claim. (*See* DE # 24-8 at 7.) Defendant

8

contends that, in the absence of any citation supporting this claim, this underlying fact is not reliable and cannot serve as the basis for Belloto's opinion. (DE # 24 at 14.) Second, defendant argues that Belloto's conclusion – that defendant had a duty to warn plaintiff that the medication contained *any* amount of lactose – is too attenuated from the other fact Belloto relies upon in forming his opinion: that most patients can tolerate five grams of lactose per dose. (*Id.* at 14-15.) The court agrees that Belloto should be excluded.

Belloto's opinion rests on the unsupported claim in the Fassio article that a lactose-intolerant patient could experience symptoms after ingesting as little as 0.01% of lactose in a given product. Belloto relies on this data point to conclude that, because a patient could experience symptoms after the ingestion of as little as 10 mg of lactose, defendant had a duty to warn patients about the presence of *any* amount of lactose in a given medication. However, plaintiff has not identified any evidence that the unsupported claim from the Fassio article is a reliable basis for Belloto's conclusions.[1]

In the absence of evidence that a lactose-intolerant patient could experience symptoms after ingesting as little as 10 mg of lactose, Belloto's opinion rests on

---

[1] The Fassio article states: "The absence in many European countries and non-European countries of laws regulating the commercialization of delactosed products – and the consequent lack of a cut-off value for establishing when a product can be labeled "lactose-free"– has resulted in the proliferation of many dairy products claiming the absence or reduction of lactose, despite the presence of a small amount (usually <0.01% or <0.1% and <0.5%, respectively) in such products, which, although reduced, is still enough to induce symptoms in at least a portion of lactose-intolerant patients." (DE # 24-8 at 7.) The Fassio article does not provide any citation in support of this claim.

9

evidence that most lactose-intolerant patients can tolerate five grams of lactose per dose. Yet, Belloto does not connect the dots between this data point, and his opinion in this case that defendant breached its standard of care by failing to warn plaintiff about the presence of less than one gram per dose of lactose. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (district court did not err in excluding expert testimony where expert relied on scientific articles that were too far removed from the facts of plaintiff's case). Belloto's conclusion is too far removed from the data on which he relies to be admissible because it amounts to nothing more than unsupported speculation that a patient may experience symptoms after ingesting less than one gram of lactose per dose of medication.

Plaintiff argues that Belloto's opinions did not require any quantitative analysis, and he did not need to cite to any study in order to opine as to the standard of care. (DE # 29 at 13-14.) Plaintiff argues that Belloto only relies on the Fassio article in so far as it demonstrates that some people are sensitive to even small amounts of lactose, but that the specific numbers are not relevant to Belloto's opinion. (*Id.* at 13.) These arguments are not persuasive. The court need not determine whether, in theory, a pharmacist could provide testimony regarding a general standard of care without relying on any quantitative data; Belloto did not opine that a pharmacist has a general duty to warn a

10

patient of the presence of any amount of an allergen in a medication, no matter how small. Rather, he specifically relies on the fact that amounts of lactose as small as 10 mg can cause symptoms in lactose-intolerant patients, in forming his opinion that defendant had a duty to warn plaintiff of the presence of lactose in the medication. This fact forms the crux of his opinion. Without this underlying fact, there would be nothing to support his conclusion that a pharmacist has a duty to warn a lactose-intolerant patient about the presence of *any* amount of lactose. Thus, contrary to plaintiff's assertion, the amount of lactose in the medication is relevant to Belloto's opinion regarding the standard of care for a pharmacist and the breach of that standard of care.

The court finds that Belloto's evidence is not based on reliable principles and methods. Therefore, the court will grant defendant's motion to exclude Belloto as an expert.

C. *Motion to Exclude Dr. Brechner*

Defendant identifies two grounds in support of its motion to exclude Dr. Brechner's testimony. The court will address each argument in turn.

First, defendant argues that Dr. Brechner's opinion should be excluded because it is not based upon sufficient facts. (DE # 24 at 17.) Defendant argues that Dr. Brechner's opinions did not reflect any knowledge or consideration of plaintiff's pre-existing medical history of chronic diarrhea, colitis, and UTIs. (*Id.* at 17-18.) Defendant argues that it is not clear from his report that Dr. Brechner reviewed plaintiff's medical records

11

that pre-date her first dose of Triamterene, and therefore his opinion is based on an incomplete, and therefore inaccurate, picture of her medical history. (*Id.* at 18-19.)

A treating physician should not be excluded as an expert witness merely because he lacks a complete or accurate understanding of a plaintiff's medical history before opining on the cause of the plaintiff's medical condition. The Seventh Circuit's decision in *Cooper v. Carl A. Nelson & Co.*, is instructive on this issue. 211 F.3d 1008 (7th Cir. 2000), *as amended on denial of reh'g and reh'g en banc* (June 1, 2000). There, the Court reviewed the district court's decision to exclude three expert witnesses' causation testimony. *Id.* at 1019. The district court excluded the three experts – plaintiff's treating physicians – because they relied on plaintiff's own statements regarding his medical history in determining the cause of his chronic pain syndrome. *Id.* The Seventh Circuit determined that the district court "assumed an overly aggressive role as 'gatekeeper' and that the jury ought to have been allowed to assess the physicians' assertion that trauma from the fall caused Mr. Cooper's pain." *Id.* For example, one of the physicians, Dr. Richardson, physically examined the plaintiff and obtained a self-reported medical history from the plaintiff. *Id.* The plaintiff reported that after his fall, he began experiencing pain. *Id.* Based on the plaintiff's self-reported medical history, Dr. Richardson determined that the plaintiff's pain was caused by his fall. *Id.* The defendant argued that a plaintiff's self-reported medical history is an insufficient basis upon which to base a causation opinion; that the plaintiff lied about his medical history; and that Dr. Richardson did not consider other possible causes of the plaintiff's pain. *Id.* at 1019-1021.

12

The Seventh Circuit rejected the defendant's arguments. The Court noted that, in clinical medicine, "the methodology of physical examination and self-reported medical history employed by Dr. Richardson is generally appropriate." *Id.* at 1020. The Court distinguished this case from cases in which the asserted cause of a patient's condition requires specialized scientific knowledge, such as a case where a physician determined that a nicotine patch worn for three days caused a myocardial infarction, or where a physician determined that a chemical sensitivity was the result of pesticide exposure, or where a physician determined that radiation exposed caused a plaintiff's cataracts. *Id.* The Seventh Circuit determined that the possibility that the plaintiff's pain was attributable to a factor other than his fall "is a subject quite susceptible to exploration on cross-examination by opposing counsel. Similarly, the accuracy and truthfulness of the underlying medical history is subject to meaningful exploration on cross-examination and ultimately to jury evaluation. Therefore, [the defendant's] contention that other conditions of [the plaintiff's] might have caused his [pain] goes to the weight of the medical testimony, not its admissibility." *Id.* at 1021. "The proper method of attacking evidence that is admissible but subject to doubt is to cross-examine vigorously, to present contrary evidence, and to give careful instructions on the burden of proof." *Id.*; *see also Walker v. Soo Line R. Co.*, 208 F.3d 581, 586 (7th Cir. 2000) (in situations where there are questions about the accuracy of a patient's self-reported medical history, and a medical expert has relied upon that history in opining on causation, district courts should allow those inaccuracies to be explored through cross-examination).

13

This case is akin to *Cooper*. Here, Dr. Brechner opined that plaintiff's symptoms may have been caused by her ingestion of lactose in the Triamterene. He made this determination after meeting with plaintiff, discussing her symptoms, and based on her report that she is lactose-intolerant. Defendant claims that Dr. Brechner should be excluded because it is possible that there were other causes for her symptoms; namely, her pre-existing conditions. To the extent that Dr. Brechner was not aware of the full scope of plaintiff's history of similar symptoms pre-dating her use of the Triamterene, this is a matter of credibility, not admissibility. The possibility of alternative causes to a plaintiff's injuries is a question properly left for exploration on cross-examination. *Cooper*, 211 F.3d at 1021; *see also Gayton v. McCoy*, 593 F.3d 610, 619 (7th Cir. 2010) ("[W]hether the cause put forth by a qualified expert actually proximately caused the injury at issue is a question for the jury at trial; a district court should only evaluate whether an expert's conclusion on causation was reasoned and based on a reliable methodology."). Defendant is free to explore the issue on cross-examination.

Furthermore, as in *Cooper*, Dr. Brechner's methodology of patient examination and self-reported patient history is reliable. Dr. Brechner's determination of causation does not require the same type of specialized scientific knowledge that might be required to opine on causation in other cases. *See Cooper*, 211 F.3d at 1020. Defendant argues that Dr. Brechner did not have sufficient facts to conduct a differential diagnosis or differential etiology – yet Dr. Brechner did not claim to have employed these methods of singling out a potential cause of plaintiff's symptoms. Moreover, such

14

methods are not required in this case. Here, Dr. Brechner's examination and consideration of plaintiff's self-reported history and symptoms were a sufficient basis for Dr. Brechner's opinion as to the possible cause of her symptoms.

Defendant's second argument in favor of excluding Dr. Brechner's opinion is that his opinion was not made to a reasonable degree of medical certainty, and therefore would not be sufficient to support a judgment under Indiana law. (DE # 24 at 19.) Defendant argues that Dr. Brechner's report stated that plaintiff's daily ingestion of the Triamterene "may have caused or contributed" to her symptoms; that the insult on her gastrointestinal tract "could cause" prolonged inflammation of the colon; that there is a "likely correlation" between plaintiff's recurrent UTIs and her chronic diarrhea; and that the diarrhea and colitis would not be expected to clear up immediately following discontinuation of the Triamterene "if it was indeed caused by the lactose." (*Id.* at 19-20; DE # 24-10.) Defendant argues that this language reflects a degree of uncertainty with respect to his causation opinions and therefore would not be sufficient to support a verdict in favor of plaintiff. (*Id.* at 20.)

This second argument from defendant is not an argument regarding the admissibility of Dr. Brechner's opinion; it is an argument regarding the sufficiency of his opinion. Dr. Brechner's opinion that the Triamterene "may have caused or contributed" to plaintiff's symptoms is sufficiently certain to be admissible under Rule 702. *See Gayton*, 593 F.3d at 619 (to be admissible, "an expert need not testify with complete certainty about the cause of an injury; rather he may testify that one factor

15

could have been a contributing factor to a given outcome."); *Stutzman v. CRST, Inc.*, 997 F.2d 291, 296 (7th Cir. 1993) ("[T]he Federal Rules do not contain any threshold level of certainty requirement. . . . "[C]ertainty is an issue for the jury and does not affect admissibility.").

The question of whether plaintiff has pointed to sufficient evidence to support a verdict in her favor is a question for summery judgment or motion during/after trial – the sufficiency of the evidence is not an appropriate basis to exclude an expert's opinion. Indeed, the case cited by defendant in support of its argument only pertains to the sufficiency – not the admissibility – of an expert's causation opinion. *Topp v. Leffers*, 838 N.E.2d 1027, 1036 (Ind. Ct. App. 2005) (trial court properly granted directed verdict where plaintiff did not present evidence sufficient to establish causation). Accordingly, the motion to exclude Dr. Brechner's opinion based on the sufficiency of the evidence to support a verdict will be denied.

Defendant also filed a motion to strike Dr. Brechner's supplemental affidavit, submitted as part of plaintiff's response to the motion to exclude. (DE # 33.) In the supplemental affidavit, Dr. Brechner stated that he reviewed plaintiff's medical history "as needed" and cited to the specific medical records that he may have included in his review. (DE # 29-5.) He also stated that he is reasonably certain of the opinions he expressed in his report. (*Id.*) Defendant argues that the supplement should be stricken as untimely. Defendant also moves to strike Footnote # 6 in plaintiff's response brief, which cites to scientific articles that were not relied upon by plaintiff's experts. (DE #

16

33.) The court did not rely upon any of the materials identified in defendant's motion to strike. Therefore, the motion to strike will be denied as moot.

      D.      *Motion for Summary Judgment Legal Standard*

The court next considers defendant's motion for summary judgment. Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after an adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). In doing so, the non-moving party cannot rest on the pleadings alone, but must present proof in support of its position. *Id.* at 248. A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The court must construe all facts in a light most favorable to the non-moving

17

party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

    E.    *Motion for Summary Judgment*

While defendant moved to exclude both Belloto and Dr. Brechner, defendant's motion for summary judgment only pertains to Dr. Brechner. (DE # 28.) First, defendant argues that, if Dr. Brechner's testimony is excluded, plaintiff cannot establish causation because in this case establishing causation requires expert evidence. However, this court has determined that Dr. Brechner's opinion is admissible; therefore, this basis for summary judgment will be denied. Second, defendant reiterates its argument (this time in the appropriate motion) that Dr. Brechner's opinions are "couched in terms less than that of a reasonable degree of medical certainty, which is insufficient, standing alone, to support a judgment or verdict." (*Id.* at 17.)

As a preliminary matter, the court finds that, in this case, expert evidence is required to establish causation. Plaintiff has a long history of experiencing the very symptoms that she claims were caused by the Triamterene. The relationship between her pre-existing conditions and the symptoms that she attributes to the Triamterene is a complicated medical question that is beyond the grasp of a lay person. Thus, expert medical evidence is required to establish causation. *See Spinnenweber*, 983 F.3d at 305; *Topp*, 838 N.E.2d at 1033.

The court next considers whether Dr. Brechner's evidence is sufficient to raise a genuine issue of material fact regarding causation. "Evidence establishing a mere

possibility of cause or which lacks reasonable certainty or probability is not sufficient evidence by itself to support a verdict. An expert medical opinion that lacks reasonable certainty, standing alone, is not sufficient to support a judgment." *Topp*, 838 N.E.2d at 1033 (internal citations omitted); *see also Smith v. Beaty*, 639 N.E.2d 1029, 1033–34 (Ind. Ct. App. 1994) ("The plaintiff's burden may not be carried with evidence based merely upon supposition or speculation."). "However, 'an expert's opinion that something is 'possible' or 'could have been' may be sufficient to sustain a verdict or award' when rendered in conjunction with other, probative evidence establishing the material factual question to be proved." *Roberson v. Hicks*, 694 N.E.2d 1161, 1163 (Ind. Ct. App. 1998) (quoting *Noblesville Casting Div. of TRW, Inc. v. Prince*, 438 N.E.2d 722, 731 (Ind. 1982)); *see also Smith*, 639 N.E.2d at 1034–35.

      Here, Dr. Brechner's opinion, when considered in conjunction with the other probative evidence, establishes more than a mere hypothesis of causation, and is sufficient for a jury to infer – without resort to speculation – that the Triamterene caused or contributed to plaintiff's symptoms. Plaintiff's own testimony provides evidence that she began having symptoms around the time that the brand of medication was switched. Plaintiff's medical records also reflect the absence and/or lessening of her symptoms before and after taking the brand of Triamterene that contained lactose. The evidence would support a finding that plaintiff suffered from persistent and worsening symptoms during the period of time when she was taking the lactose-containing Triamterene. This is sufficient evidence from which a jury could reasonably

find in favor of plaintiff on the issue of causation. Accordingly, defendant's motion for summary judgment will be denied.

## IV. CONCLUSION

For these reasons, the court **DENIES** defendant's motion for summary judgment. (DE # 27.) The court **GRANTS in part** defendant's motion to exclude (DE # 24), on the terms identified in this Opinion and Order. The court **DENIES as moot** defendant's motion to strike. (DE # 33.) The court **ORDERS** the parties to file a joint status report regarding their willingness to engage in a settlement conference before a Magistrate Judge by **April 9, 2021**. A trial date will be set under a separate order.

                                    **SO ORDERED.**

Date: March 31, 2021

                                    s/James T. Moody
                                    JUDGE JAMES T. MOODY
                                    UNITED STATES DISTRICT COURT